UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIANNA DEANDREA,

    Plaintiff,

v.                                                                 Case No. 8:17-cv-2195-T-AEP

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for DIB and SSI (Tr. 136-49). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 68-79, 82-88). Plaintiff then requested an administrative hearing (Tr. 89). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 33-67). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 16-32). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 14-15). Following denial by the Appeals Council, Plaintiff appealed to the district court, which remanded the claim under sentence four of 42 U.S.C. § 405(g) (Tr. 934-46).

During the pendency of the appeal, Plaintiff filed a new application for benefits, which the Appeals Council consolidated with the claim on remand from the district court (Tr. 947-52). Plaintiff's consolidated claims went before another ALJ, who held hearings and denied Plaintiff's consolidated claims (Tr. 792-878, 953-77). Upon consideration, the Appeals Council vacated the ALJ's denial, remanded the case for a new hearing and new decision, and consolidated Plaintiff's claims with a third claim filed by Plaintiff (Tr. 978-83).

On remand, a third ALJ considered Plaintiff's consolidated claims, held another hearing, and denied Plaintiff's claims (Tr. 756-91, 879-908). Plaintiff filed exceptions with the Appeals Council, but the Appeals Council declined jurisdiction (Tr. 744-50, 1140-45). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1983, claimed disability beginning May 1, 2007, which she later amended to March 1, 2010 (Tr. 136, 143, 760, 883). Plaintiff obtained at least a high school education (Tr. 187). Plaintiff's past relevant work experience included work as a cashier, administrative clerk, and accounting clerk (Tr. 184, 779). Plaintiff alleged disability due to constant pain, bipolar disorder, paranoia, depression, and anxiety (Tr. 183).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2012 and that Plaintiff had not engaged in substantial gainful activity since March 1, 2010, the amended alleged onset date (Tr. 762). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, fibromyalgia, paresthesias, bipolar disorder, anxiety disorder, personality disorder, and marijuana use (Tr. 762). Notwithstanding the noted impairments, the ALJ determined Plaintiff

did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 766). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work with the following limitations: could lift/carry and push/pull up to 10 pounds; could sit for six hours out of an eight-hour workday; should avoid kneeling, crawling, and climbing ladders, ropes, and scaffolds; could perform occasional stooping, crouching, and climbing ramps and stairs; precluded from work at unprotected heights, work around hazardous moving mechanical parts, or operating a motor vehicle; no exposure to extreme temperatures; and mentally limited to simple, routine, and repetitive tasks, making simple work-related decisions, frequent interaction with supervisors and coworkers, and occasional interaction with the general public (Tr. 769). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence of record and could not be fully credited (Tr. 770).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 779). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a document preparer, addressor, and call-out operator/credit checker (Tr. 780). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 780).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.[1] If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled

---

[1] The cited references to the regulations pertain to those in effect at the time the decision was rendered on February 10, 2016.

to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

Plaintiff argues that the ALJ erred by (1) failing to properly consider the frequency with which Plaintiff required treatment and (2) failing to properly consider the medical opinions.

For following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

### A. Frequency of Treatment

Plaintiff first argues that the ALJ failed to consider the frequency with which Plaintiff required treatment on a monthly basis in improperly determining that Plaintiff maintained the ability to perform a reduced range of sedentary work. In support of her position, Plaintiff points to the record and also attached a set of tables synthesizing the dates of treatment she received during the years from 2010 through 2015, although she excluded treatment solely for pregnancy, childbirth, routine minor illnesses, and consultative examinations in support of her claim for disability (Doc. 27-1). According to Plaintiff's calculations, Plaintiff received disability-related treatment a total of 19 days in 2010, 41 days in 2011, 25 days in 2012, 44 days in 2013, 50 days in 2014, and 41 days in 2015 (Doc. 27-1), for an average of approximately three days in treatment per month.

In determining a Plaintiff's RFC, the ALJ must consider all the relevant evidence of record, including the effects of treatment, taking into consideration limitations or restrictions imposed by the mechanics of treatment, such as the frequency of treatment, duration, disruption to routine, and side effects of medication. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). Though the Eleventh Circuit recently rejected the argument that numerous medical appointments render a claimant disabled, *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017), the ALJ must still consider the effects of a claimant's treatment in conjunction with the other evidence of record. Such consideration is especially important where, as here, Plaintiff required several appointments for treatment of her impairments each month; no medical source indicated such treatment was excessive or

6

unnecessary or that Plaintiff was malingering; and Plaintiff did not cite the frequency of her treatment as the sole basis for her allegations of disability.

The Commissioner asserts that consideration of the frequency of Plaintiff's treatment reveals that many of Plaintiff's appointments with her primary care physician consisted of follow-up appointments and requests for medication refills, including medication to assist with weight loss and acne (Tr. 668-737, 1751-1805); Plaintiff scheduled several appointments in the evening (Tr. 481, 668-69, 672-73, 678-81, 684-85, 690-93, 696-701, 708-17, 722-25, 1264-65, 1268-69, 1406-07, 1647); the duration of several of Plaintiff's appointments lasted less than an hour (Tr. 610-13, 634, 646, 650-52, 660-61, 668-69, 682-83, 1264-76, 1390, 1395-96, 1406-07, 1413, 1488, 1495-96, 1500-04, 1638-39, 1644-47, 1651-52, 1709-13, 1720-23); and Plaintiff scheduled several appointments on the same day (Tr. 645, 649-52, 686-87, 700-01, 704-05, 712-13, 720-21, 724-25, 1236, 1258, 1377-82, 1399, 1482-86, 1515-18, 1551, 1591-96, 1623-24, 1632-33, 1638-40, 1694, 1713-14). Notwithstanding, the ALJ failed to address these issues, and the Court may not re-weigh the evidence or substitute its own judgment for that of the ALJ. *Bloodsworth*, 703 F.2d at 1239. Given the ALJ's failure to properly consider the frequency of Plaintiff's treatment, the ALJ failed to apply the correct legal standards, and remand is therefore warranted. Upon remand, the ALJ shall consider the effect that the frequency of Plaintiff's treatment will have on her ability to perform work activity on a regular and continuing basis eight hours per day for five days per week or an equivalent schedule. *See* SSR 96-8p.

### B. Medical Opinions

Plaintiff additionally contends that the ALJ failed to properly consider several medical opinions. Specifically, Plaintiff argues that the ALJ improperly considered the opinions of Dr. Tanus, Dr. Timothy Foster, Dr. Ashok Komarla and ARNP Caroline Seignon, and Dr. Michael

Stevens. When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

      i.      **Dr. Tanus**

          a.      **2010 Opinion**

Initially, Plaintiff contends that the ALJ improperly considered the opinions of her treating physician, Dr. Tanus. As the ALJ discussed, Dr. Tanus offered three separate opinions as to Plaintiff's abilities and limitations (Tr. 600-603, 740-43, 774, 1746-47). In the 2010 Medical Source Statement, Dr. Tanus limited Plaintiff to occasionally lifting or carrying 10 pounds, frequently lifting or carrying 10 pounds, standing or walking for 1 hour in an 8-hour workday, and sitting for 1 hour in an 8-hour workday (Tr. 600-01). Dr. Tanus further limited Plaintiff to only frequently balancing and occasionally climbing, stooping, crouching, kneeling, and crawling (Tr. 601). Dr. Tanus also opined that Plaintiff's impairments limited her ability to push or pull, see due to her need for glasses, and work around dust and fumes due to her asthma (Tr. 602). In setting forth such opinion, Dr. Tanus repeatedly indicated that she relied primarily upon Plaintiff's statements (Tr. 600-03). Also, when asked what clinical findings supported her assessment, she indicated that Plaintiff "[n]ot working" was the basis (Tr. 602)

In considering the 2010 opinion, the ALJ afforded the opinion little weight, noting that the assessment was based entirely upon Plaintiff's subjective allegations rather than the objective evidence and, even so, Dr. Tanus's treatment notes up until that time did not support Dr. Tanus's opinion (Tr. 774). Indeed, as the Commissioner notes, a physician's primary reliance upon subjective complaints as the basis for an opinion establishes good cause for affording such opinion less than controlling weight. *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (*per curiam*) (finding that good cause existed for affording a treating physician's opinion less weight where the physician relied too heavily on the plaintiff's subjective reports); *Anderson v. Comm'r, Soc. Sec. Admin.*, 441 F. App'x 652, 653 (11th Cir. 2011) (*per curiam*) (finding that an ALJ did not err in affording a treating physician's opinion less than controlling weight where the physician's findings were not supported by objective evidence and indicated that his treatment notes primarily provided only the diagnosis or simply

documented subjective complaints during each visit). Furthermore, as the ALJ correctly concluded, Dr. Tanus's treatment notes up until that time did not support the limitations set forth in the 2010 Medical Source Statement (Tr. 668-677). For instance, Dr. Tanus noted normal gait, no difficulty moving any extremities, speech without shortness of breath, and good respiratory effort despite the postural and environmental limitations noted (Tr. 600-03, 668-770). Moreover, although Plaintiff complained of some back and neck pain, Plaintiff indicated therapy helped the back and neck pain and Plaintiff's primary concerns centered around obtaining medicine for weight loss and clearing up her acne (Tr. 668-677). Accordingly, the ALJ appropriately afforded little weight to Dr. Tanus's 2010 opinion based on the primary reliance upon Plaintiff's subjective complaints and the lack of objective or clinical findings supporting the limitations opined.

### b. 2012 Opinion

In 2012, Dr. Tanus submitted her second Medical Source Statement (Tr. 740-43). This time, she limited Plaintiff to occasionally and frequently lifting or carrying up to 10 pounds, standing or walking for 1 to 2 hours in an 8-hour workday, sitting for 1 hour in an 8-hour workday, occasionally balancing, and never climbing, stooping, crouching, kneeling, or crawling (Tr. 740-41). Dr. Tanus opined that Plaintiff's impairments did not affect her ability to reach, handle, feel, push, pull, see, hear, or speak but that she would not be able to work around dust or smoke due to her asthma (Tr. 742). Regarding the clinical findings supporting the 2012 assessment, Dr. Tanus cited to Plaintiff's back pain, neck pain for several years, and anxiety and depression for which Plaintiff treated with a psychiatrist (Tr. 742). Dr. Tanus indicated that these diagnoses were confirmed by objective findings but that she also relied on Plaintiff's subjective complaints (Tr. 742).

In considering the 2012 opinion, the ALJ again afforded Dr. Tanus's opinion little weight, finding that Dr. Tanus's treatment notes did not support the limitations suggested (Tr. 774). Namely, the ALJ noted that Dr. Tanus treated Plaintiff's back pain conservatively, the most recent MRI of the lumbar spine was essentially normal, nerve conduction studies did not confirm any basis for Plaintiff's complaints of radiating pain, and the lack of any objective evidence supporting Plaintiff's limitation to sitting, standing, and walking for just 1 to 2 hours per day (Tr. 774). As the ALJ correctly noted, Dr. Tanus's treatment notes did not support the limitations she set forth in the 2012 Medical Source Statement, especially in light of her conservative treatment of medication and physical therapy for Plaintiff's back and neck pain (Tr. 668-737). Further, the ALJ also correctly noted that the nerve conduction studies of both the right upper and left lower extremities performed by Dr. S.S. Kamat in 2013 were within normal limits, thus indicating no cause for Plaintiff's alleged radiating pain (Tr. 1320-24). Finally, the ALJ correctly noted that the most recent MRI, presumably the 2009 MRI, indicated very minor issues, including only two disc bulges and straightening of the normal lumbar lordosis, indicating underlying muscle spasms, although that MRI was from 3 years prior to issuance of the 2012 opinion (Tr. 271-72, 774). Based on Dr. Tanus's conservative treatment record and the objective evidence, the ALJ appropriately afforded little weight to Dr. Tanus's opinion setting forth extreme postural limitations in 2012.

### c. 2015 Opinion

Dr. Tanus offered a third opinion in 2015, in which she stated that Plaintiff's conditions were still the same as they were from 2008-2013 and then listed off all of Plaintiff's impairments and issues, including low back and neck pain; chronic, recurrent rhinitis with chronic upper respiratory infections 2 to 3 times per month, which were treated with frequent doses of antibiotics and for which Plaintiff also saw an allergist; abdominal pains and digestive

issues that led to a diagnosis of gastro paresis, which was still problematic even with medication; chronic cholecystitis; fibromyalgia; and severe anxiety and depression, some of which were diagnosed after the 2012 opinion (Tr. 1746-47). Based on those impairments and issues as well as the treatment for each, Dr. Tanus indicated that she would again opine, like in her 2010 opinion and 2012 opinion, that Plaintiff was unable to work 8 hours per day, 5 days per week due to her physical and mental problems (Tr. 1746-47). Dr. Tanus further opined that Plaintiff would not be a reliable employee due to the number of absences related to her chronic illness and given that she was hospitalized 4 times in 2013 alone (Tr. 1747).

In considering the 2015 opinion, the ALJ afforded the opinion little weight, noting that Dr. Tanus based her opinion on entirely different impairments – respiratory issues, gastrointestinal issues, and fibromyalgia – and that Dr. Tanus's treatment notes did not support her opinion (Tr. 774). The record reflects that Plaintiff was in fact diagnosed with the respiratory issues, gastrointestinal issues, and fibromyalgia prior to the issuance of the 2015 opinion, so it is unclear why that fact would provide a basis for affording Dr. Tanus's opinion little weight. Furthermore, Dr. Tanus opined that Plaintiff's frequency of treatment would interfere with Plaintiff's ability to work – an issue the ALJ failed to properly consider. Accordingly, upon remand, the ALJ should reconsider Dr. Tanus's 2015 opinion.

### ii. Dr. Foster

Plaintiff next argues that the ALJ erred in her consideration of the opinion from Dr. Foster, an examining psychologist, because the ALJ improperly relied upon Plaintiff's alleged stability on medication for rejecting the opinion and because Plaintiff saw Dr. Foster at the request of her attorney rather than for necessary medical treatment. As the ALJ correctly noted, Plaintiff met with Dr. Foster in November 2015 at the request of Plaintiff's counsel, who provided a few background treatment notes for Dr. Foster's review (Tr. 1806-10). During the

examination, Dr. Foster observed that Plaintiff appeared anxious but also fully cooperative (Tr. 1807). Dr. Foster set forth the following findings regarding Plaintiff's abilities during the mental status examination: could correctly identify the year, season, month, date, and day of the week as well as the state, county, city, and type of building where they were located; related well and pleasantly; showed no problems sustaining attention; appeared of average intelligence; affect was sad and fearful; could accurately perform basic subtraction; could spell the word "world" forward and backward correctly; could immediately recall a brief list of three common items and recall it correctly after a 5-minute delay; could follow a simple 3-step instruction; could read and write effectively; could copy a simple design effectively; denied hallucinations and/or delusions; indicated current suicidal ideation but denied intent; and demonstrated judgment and insight within normal limits (Tr. 1808). After examination, Dr. Foster opined that Plaintiff could understand, remember, and carry out simple instructions but that she related inadequately to peers, supervisors, and the public; her memory and concentration appeared impaired; she could not cope with stress effectively; and she could not complete a normal workweek without serious interruptions from psychologically based symptoms (Tr. 1809).

In considering Dr. Foster's opinion, the ALJ afforded the opinion little weight, noting that Dr. Foster did not qualify as a treating source and saw Plaintiff at the request of her attorney, and, further, although Dr. Foster reviewed a few treatment records, Dr. Foster did not take into consideration the fact that the cumulative evidence showed that Plaintiff's symptoms stabilized when compliant with medication (Tr. 777). At the time of the ALJ's decision, the regulations distinguished treating sources based on the nature of the relationship. *See* 20 C.F.R. §§ 404.1502, 416.902. Namely, the regulations provided that the ALJ would "not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a

report in support of your claim for disability." 20 C.F.R. §§ 404.1502, 416.902. In that scenario, the ALJ would consider the acceptable medical source as a non-treating source, and thus such opinion would not be entitled to controlling weight. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(1) & (2), 416.902, 416.927(c)(1) & (2). Despite Plaintiff's protestations, the ALJ properly noted that Dr. Foster was not a treating source as the treatment sought from Dr. Foster was based solely on Plaintiff's need to obtain a report in support of her claim of disability (Tr. 777, 884). Accordingly, the ALJ did not err in affording Dr. Foster's opinion less than controlling weight on that basis.

Moreover, as the ALJ concluded, Plaintiff's mental impairments improved with medication (Tr. 777). In the decision, the ALJ highlighted several instances where Plaintiff's symptoms improved with medication or where she deteriorated from a mental standpoint as a result of non-use or non-compliance with medications, and the record supports such finding (Tr. 775-77, 1264-65, 1275, 1403, 1406, 1505-06, 1552-53, 1585-94, 1653, 1713, 1780-89, 1792-95, 1804-05). Given the repeated references to Plaintiff's improvement and stabilization with medication or deterioration when ceasing to comply with her medication regimen, the ALJ properly determined that the evidence of record did not support Dr. Foster's opinion and thus correctly afforded the opinion little weight.

### iii. Dr. Komarla and ARNP Seignon

Plaintiff asserts the ALJ also erred by according little weight to the opinion of Dr. Komarla and ARNP Seignon. Plaintiff cites several bases for her assertion, claiming that the ALJ erred by stating that ARNP is not an acceptable medical source, indicating that ARNP Seignon appeared to sign the report on behalf of Dr. Komarla, finding that the treatment records did not demonstrate that Dr. Komarla personally provided treatment to Plaintiff, and noting that the opinion indicated that some of Plaintiff's vocational limitations would need to be evaluated

by Vocational Rehabilitation (Tr. 778). In considering the opinion of Dr. Komarla and ARNP Seignon, the ALJ concluded:

> Little weight is given to the medical source statement completed by nurse practitioner, Caroline Seignon, ARNP, and cosigned by Dr. Ashok Komarla in June 2014. This statement indicates that the claimant is "not able to cope under stress" due to her bipolar disorder and anxiety. Little weight is given to this opinion for several reasons. First, Ms. Seignon is not an acceptable medical source. Although the document purports to be co-signed by Dr. Ashok Komarla, the signature appears to be the handwriting of Ms. Seignon, and Dr. Komarla's last name was initially misspelled. Furthermore, a review of the corresponding treatment records from Northside Mental Health from this same period show that Ms. Seignon saw the claimant on a few occasions, but the claimant was not treated by Dr. Komarla. Lastly, Ms. Seignon noted through this questionnaire that she was unable to provide a detailed assessment of the claimant's vocational limitations.

(Tr. 778) (internal citations omitted). As the ALJ correctly noted, at the time of the decision, a registered nurse-practitioner was not deemed an acceptable medical source who could provide evidence to establish an impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). Instead, nurse-practitioners constituted "other sources" who could offer evidence regarding the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d). Accordingly, although an ALJ should consider opinions from nurse-practitioners, an ALJ need not afford such opinions controlling or significant weight. As such, the ALJ did not err in stating that ARNP Seignon was not an acceptable medical source or in affording her opinion less weight on that basis.

The ALJ likewise did not err in correctly noting that the Medical Source Statement indicated that an assessment of Plaintiff in a vocational rehabilitation setting was necessary to determine Plaintiff's limitations (Tr. 778, 1419-21). Indeed, Dr. Komarla and ARNP Seignon offered no opinion as to Plaintiff's abilities relating to making occupational adjustments or making performance adjustments (Tr. 1419-20). Rather, they simply stated that such factors would "need to be assessed in a Vocational Rehabilitation setting" (Tr. 1419-20).

15

The ALJ's statements regarding the lack of actual treatment performed by Dr. Komarla did not necessarily constitute reversible error but should lead to further inquiry by the ALJ (Tr. 778, 1419-21, 1704-45). The treatment notes and prescription orders do not indicate that Dr. Komarla ever met with Plaintiff, provided treatment to Plaintiff, or prescribed any medication to Plaintiff, but Dr. Komarla's signature appears on the Medical Source Statement (Tr. 1421, 1704-45). The ALJ's observation regarding the appearance that ARNP Seignon signed the Medical Source Statement on behalf of herself and Dr. Komarla was speculative, at best (Tr. 778, 1421). To the extent necessary to determine whether Dr. Komarla rendered the opinion in the Medical Source Statement or engaged in any treatment of Plaintiff, the ALJ should recontact Dr. Komarla.

As to the remainder of the opinion, it related to Plaintiff's ability to make personal or social adjustments (Tr. 1420-21). With respect to Plaintiff's abilities to make personal or social adjustments, the opinion reflects that Plaintiff indicated a good ability to maintain personal appearance, a fair ability to behave in an emotionally stable manner and relate predictably to social situations, and a poor ability to demonstrate reliability (Tr. 1421). It further indicates that, due to her chronic psychiatric condition, Plaintiff would not be able to cope under stress (Tr. 1421). To the extent that the opinion comports with the other evidence of record as to Plaintiff's limitations with regard to reliability, as outlined above, the ALJ should reconsider the Medical Source Statement.

### iv. Dr. Stevens

Finally, Plaintiff contends that the ALJ erred by affording "some weight" to the opinion of Dr. Stevens, a state agency non-examining medical consultant, while affording less than "some weight" to the opinions of treating and examining medical sources. Plaintiff asserts that the ALJ erred "because the opinions of non-examining doctors alone are not substantial

evidence to reject the opinions of treating or examining doctors, or to support a decision" (Doc. 27, at 29). Contrary to Plaintiff's assertion, however, the ALJ did not rely upon Dr. Stevens's opinions to reject the opinions of any other physicians nor relied solely upon Dr. Stevens's opinions to support the decision (Tr. 759-81).

State agency medical consultants are considered experts in the Social Security disability evaluation process. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). When considering the weight to afford state agency medical consultants, SSR 96-6p provides:

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. …
>
> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.

SSR 96-6p, 1996 WL 374180, at *2-3 (S.S.A. July 2, 1996). Accordingly, as a general proposition, an ALJ does not err in affording some weight to the opinion offered by a state agency medical consultant while affording less weight to treating or examining sources.

Furthermore, as the ALJ indicated, Dr. Stevens submitted a Psychiatric Review Technique and Mental RFC Assessment in March 2010 (Tr. 359-76, 777). Specifically, Dr. Stevens determined that Plaintiff suffered from bipolar disorder and a panic disorder, which caused mild limitation in restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration (Tr. 363-73). Dr. Stevens further opined that Plaintiff was moderately limited in her ability to (1) perform activities within a schedule,

17

maintain regular attendance, and be punctual within customary tolerances and (2) maintain the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 359-60). Notwithstanding those moderate limitations, Dr. Stevens opined that Plaintiff maintained the ability to understand and remember instructions, perform simple tasks, be cooperative, and maintain awareness of hazards (Tr. 361). In all other functional areas, Dr. Stevens concluded that Plaintiff was not significantly limited (Tr. 359-60).

> In considering Dr. Stevens' opinions, the ALJ stated:
>
> As for the opinion evidence addressing the claimant's mental impairments, some weight is given to the psychiatric review technique and mental residual functional capacity assessment completed by Dr. Michael Stevens in March 2010. This State agency psychological consultant opined that the claimant has mild difficulties with activities of daily living and in maintaining social functioning, and moderate difficulties with concentration, persistence, or pace. Despite these difficulties, Dr. Stevens opined that the claimant is capable of understanding and remembering instructions, doing simple tasks, and being cooperative. Only some weight is given to this opinion. While the undersigned concurs that the claimant is not disabled due to mental limitations, as discussed in the analysis of the "paragraph B" criteria in Section 4 above, the evidence supports moderate limitations in social functioning as well as with concentration, persistence, or pace.

(Tr. 777) (internal citations omitted). Nowhere in his discussion of Dr. Stevens' opinions does the ALJ reject the opinions of any other medical source. Nor does the ALJ's decision indicate that Dr. Stevens' opinions formed the sole basis for her findings and conclusions. Accordingly, Plaintiff's arguments on those bases lack merit. Upon remand, however, in considering Plaintiff's frequency of treatment, the ALJ should consider Dr. Stevens's opinion regarding Plaintiff's moderate limitations relating to the ability to perform within a schedule and maintain regular attendance.

**IV.**

After consideration, therefore, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 27th day of March, 2019.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record